IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OBA JACKSON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 11-6604 |
| CITY OF PHILADELPHIA | : | |
| | : | |

**NORMA L. SHAPIRO, J.**                                                                    **AUGUST 20, 2014**

## MEMORANDUM

Oba Jackson ("Jackson"), filing an action under 42 U.S.C. § 1983 against the City of Philadelphia ("the City"), alleged he was unable to exercise his religious beliefs as a Muslim while incarcerated at the Curran Fromhold Correctional Facility ("CFCF") in the Philadelphia Prison System ("PPS"). He brought claims under the First Amendment of the United States Constitution and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). Following a three day jury trial, civil judgment was entered in favor of the City as to plaintiff's First Amendment and Religious Land Use and Institutionalized Persons Act ("RLUIPA") claims. Plaintiff then moved for judgment as a matter of law, or in the alternative, for a new trial. Both motions will be denied.

I. FACTUAL AND PROCEDURAL BACKGROUND

Jackson had been in Philadelphia custody for almost a year at the time he filed his first amended complaint. Plaintiff alleged he could not perform Salat, prayer that occurs five times a day, or attend Jumu'ah, a weekly congregation of religious Muslims. Plaintiff sought only injunctive relief. Cross-motions for summary judgment were denied because there were disputed issues of material fact whether plaintiff could return to his cell to pray, pray in his three-man cell,

1

and/or attend Jumu'ah.

Plaintiff's oral motion for judgment as a matter of law at trial was denied. Following a verdict for defendant, plaintiff filed a Renewed Motion for Judgment as a Matter of Law and an Alternative Motion for a New Trial (paper no. 79). After defendant filed a Response in Opposition (paper no. 86), the court heard oral argument on the pending motions.

Plaintiff argued that the judgment order entered in favor of defendant should be vacated and judgment as a matter of law should be entered in favor of plaintiff. In the alternative, plaintiff asks the court to order a new trial under Federal Rule of Civil Procedure 59(a) because: (1) the jury's verdict was against the weight of the evidence; or (2) defendant's use of peremptory strikes violated *Batson v. Kentucky* and its progeny.

## II. DISCUSSION

### A. Judgment as a Matter of Law

Judgment as a matter of law may be entered "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."[1] Fed. R. Civ. P. 50(a)(1). The court must determine whether "the record contains the minimum quantum of evidence from which a jury might reasonably afford relief." *Keith v. Truck Stops Corp. of America*, 909 F.2d 743, 745 (3d Cir. 1990). The court should grant the motion only if, after viewing the evidence in the light most favorable to the nonmovant, the evidence is not sufficient for the jury to find liability. *Goodman v. Pennsylvania Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002). "In determining whether the

---

[1] Where a Rule 50(a) motion is renewed after trial, the court may allow judgment on the verdict, order a new trial, or direct entry of judgment as a matter of law. Fed. R. Civ. P. 50(b).

evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993).

On the First Amendment claim, plaintiff was required to prove, by a preponderance of the evidence, that: (1) his beliefs were sincerely held and religious in nature, *Africa v. Com. of Pa.*, 662 F.2d 1025, 1030 (3d Cir. 1981); (2) the City's policy, practice or custom burdened plaintiff's ability to exercise his religious beliefs; and (3) the City's policy, practice or custom was not reasonably related to a legitimate penological interest. *See Turner v. Safley*, 482 U.S. 78, 89 (1987). As the court stated in its jury instructions, "A pretrial detainee's First Amendment rights are not burdened by the denial of any one specific practice, but the pretrial detainee must be able to pray in one way or another."

On the RLUIPA claim, plaintiff had to prove a *prima facie* case that: (1) his religious beliefs were sincerely held; and (2) the City's policy, practice or custom substantially burdened his ability to exercise his religious beliefs. *Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007). A substantial burden exists where: (1) an inmate has been forced to choose between following the precepts of his religion and forfeiting benefits otherwise available to other inmates or abandoning a precept of his religion and receiving the benefit; or (2) the government has put substantial pressure on the inmate to substantially modify his behavior and violate his beliefs. *Id.* at 280. If plaintiff met his *prima facie* case, then the defendant had to prove: (1) its policy, practice or custom furthered a compelling penological interest; and (2) its policy or practice was the least restrictive means of furthering this compelling penological interest. 42 U.S.C. § 2000cc–1(a). *See also Williams v. Secretary, PA. Dept. of Corr.*, 450 Fed. Appx. 191, 195 (3d

Cir. 2011) (a prison's restrictions on where a Muslim inmate might engage in obligatory prayer were the least restrictive means of furthering security interests).

Evidence presented at trial supported the jury's finding that the City's actions did not place a burden or substantial burden on plaintiff's religious exercise.  There was evidence that the plaintiff was able to perform many, but not all, of the prayers required for his religious exercise.  Plaintiff testified that while in custody at PPS he performed five Salats every day and was able to attend Jumu'ah when it was called.  *Trans.* 163:5-8.  Co-plaintiff Sutton testified that he was able to attend Jumu'ah services once or twice a month and that his inability to attend the services on a weekly basis did not present a problem for him "per se."  *Trans*. 198:9-23. Co-plaintiff Sutton was able to pray in the dayroom at times and was permitted to return to his cell to pray "40 percent of the time . . . Maybe half and half." *Trans*. 199:10 - 200:21.  Another Muslim former inmate at CFCF, Kevin Pickard, testified that he never had a problem praying in his cell. 142:11-13.

The trial record supports a finding that sufficient evidence underlies the jury's verdict and the motion for judgment as a matter of law will be denied.

### B.  New Trial

#### 1.  Weight of the Evidence

Plaintiff also argues that the court should grant a new trial because the verdict is against the weight of the evidence.  A district court should "grant a new trial on the basis that the verdict was against the weight of the evidence only where a miscarriage of justice would result if the verdict were to stand." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir. 1991).  There was evidence for a jury to find that a Muslim plaintiff was able to engage in religious

exercise.  Plaintiff presented evidence of burden, including Mr. Pickard's testimony that he had problems praying outside his cell, was not permitted to pray in the dayroom, and was not allowed to leave the dayroom and return to his cell to pray.  Plaintiff also testified that he was not permitted to perform Salat in the dayroom and found it difficult to pray in his cell.   This testimony might have supported a verdict in favor of plaintiff, but does not rise to the level necessary to require a new trial.  Credibility, when there are disputes of fact, is for the jury to decide.  The jury's verdict is not against the great weight of the evidence.  The motion for a new trial will be denied.

### 2. Batson

Plaintiff also raises a *Batson* claim to support his motion for a new trial based on the City's strike of Jurors 7, 11 and 14, all three of whom were African-American.  To prevail on a *Batson* claim, the plaintiff must establish a *prima facie* case that the defendant's use of peremptory strikes was discriminatory by demonstrating that: (1) the prospective juror is a member of a cognizable group; and (2) there are circumstances, including any unusual pattern of strikes or other suggestive comments or acts giving rise to an inference of discrimination. *Batson v. Kentucky*, 476 U.S. 79, 96-97 (1986); *see also Snyder v. Louisiana*, 552 U.S. 472, 476 (2008), *Hernandez v. New York*, 500 U.S. 352, 358 (1991). Once a *prima facie* case is established, the burden then shifts to the opposing party to articulate a neutral, non-discriminatory explanation for the challenged strikes. Though the explanation must be clear and reasonably specific, it need not rise to the level justifying exercise of a challenge for cause.  The trial judge must then decide whether the objecting party has proved that the other party struck the prospective jurors with purposeful discrimination.  *Snyder*, 552 U.S. at 484-85.

During *voir dire*, plaintiff made a *prima facie* case that the City struck the jurors because of their race. Defense counsel used three of its four peremptory strikes on African Americans. When the issue was raised, the court questioned defense counsel on the reasons for using each strike. Counsel articulated race-neutral reasons for the strikes. The City identified that two of the jurors had a family member incarcerated within the Philadelphia County Prison system, where the conditions at issue occurred. For the other juror, the City raised concerns about her inability to comprehend the evidence and the manner in which she responded to questions concerning the veracity of police officers. The court then questioned the jurors and replayed that portion of *voir dire* recording and noted a Caucasian juror was also stricken because he had a family member incarcerated in South Carolina. The court determined the strikes were permissible. Two African-American panel members were eventually seated on the jury. *Voir Dire Trans.*, *Dec. 17, 2012* at 85:4-21. Determinations on *Batson* challenges are factual and depend largely on the court's assessment of credibility. *See United States v. Clemmons*, 892 F.2d 1153, 1155 (3d Cir. 1989). The motion for a new trial based on the *Batson* claim will be denied.

### III.   CONCLUSION

The motion for judgment as a matter of law, or in the alternative, for a new trial will be denied. An appropriate Order follows.